# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GN NETCOM, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLANTRONICS, INC., <br><br> Defendant. | C.A. No. 12-1318-LPS |

## MEMORANDUM ORDER

At Wilmington this **5th day** of **October**, **2017**:

Having reviewed the parties' joint status report filed on October 3 (D.I. 500), as well as other materials submitted throughout this case, and having discussed these issues with the parties on multiple occasions, including during the pretrial conference ("PTC") held on October 2, **IT IS HEREBY ORDERED** that:

1. Rather than respond to the four spoliation-related questions posed by Plaintiff GN Netcom, Inc. ("GN" or "Plaintiff") and Defendant Plantronics, Inc. ("Plantronics" or "Defendant"), the Court has determined the preliminary and final jury instructions it will give with respect to spoliation, as well as the "Stipulated Facts" it will read to the jury at or near the start of the forthcoming trial.

2. The deadline for the parties to file proposed preliminary jury instructions, consistent with this Order and any other Orders the Court may issue subsequently, is Monday, October 9 at 3:00 p.m. At the same time the instructions are filed they must also be submitted to

chambers by electronic mail in PDF and either Corel WordPerfect or Microsoft Word format.

3. The deadline for the parties to file proposed final jury instructions and verdict forms, consistent with this Order and any other Orders the Court may issue subsequently, is Saturday, October 14 at 3:00 p.m. At the same time the instructions are filed they must also be submitted to chambers by electronic mail in PDF and either WordPerfect or Microsoft Word format.

4. With respect to the parties' dispute as to whether statements, arguments, and evidence from Plantronics relating to its purportedly positive relationship with the government, historically and currently, will "open the door" to GN presenting evidence of the recent GSA debarment investigation, the Court holds that this will not open the door. With respect to the debarment investigation, any minimal probative value is substantially outweighed by the risks of unfair prejudice, juror confusion, and waste of time. The door would, however, be opened were Plantronics to argue or present evidence, inaccurately, that it has never been the subject of a government investigation. Should GN believe at any point that the door to use of the GSA evidence has been opened, it must provide notice and obtain leave of the Court before using such evidence. No additional briefing should be submitted on this issue at this time.

5. As Plantronics now requests a ruling prior to trial as to the admissibility of evidence relating to minimum advertised price ("MAP") policy and horizontal restraints, the Court holds that, based on the argument to date, such evidence is relevant and the concerns identified by Plantronics do not substantially outweigh the probative value of such evidence. Plantronics may, however, renew its objections to specific evidence of MAP policy and horizontal restraints if it believes the Rule 403 balance favors exclusion.

6. Given the parties' stipulation in the pretrial order ("PTO") (*see* D.I. 490 at 12), as well as their statements in the status report, the Court does not perceive a ripe dispute with respect to "foundation" for exhibits to be admitted into evidence. Any such disputes will be resolved at trial through the procedures already provided for in the PTO and the Court's typical practices.

7. The Court continues to believe that twelve (12) hours per side is an adequate amount of time for each party to fully and fairly present its case, consistent with the Court's practices for how it counts time. Nevertheless, given Plantronics' insistence to the contrary, and GN's non-opposition (*see* D.I. 500 at 7), the Court will increase the parties' time allocation to fourteen (14) hours per side. In order to maintain this trial within the dates previously given (October 11-18), the Court will not dismiss the jury until 5:00 p.m.[1]

8. Plantronics' request that the jury be asked to make certain factual findings with respect to equitable defenses is DENIED. Given the complexity of the issues the jury must necessarily decide, and given Plantronics' repeatedly-expressed concerns about the amount of time allocated to this trial, the Court will not ask the jury to return an advisory verdict.

9. Under the circumstances, the Court has determined that it will NOT charge all time for arguing objections outside the presence of the jury (e.g., when the Court meets with counsel at 8:30 a.m. each morning) to the objecting party. Instead, the Court will charge each

---

[1]Plantronics' request that the trial date be continued to a date when the Court could allow each side more time is DENIED. The Court believes it has provided the parties a more than adequate amount of time. Moreover, the next occasion on which the Court (given the other commitments currently on its calendar) could provide the parties more than six days for trial is not until March 2018. Delaying trial until then, over Plaintiff's objection, would not be appropriate.

party for the time that party is speaking regarding such objections.  The Court will split evenly whatever time it takes the Court to articulate its decision on such objections.

10. Provided that the parties make the revisions noted below, submit a revised version consistent with this Order and confer with the Court's jury administrator no later than 12:00 p.m. tomorrow (October 6) and comply with all instructions they receive from the jury administrator, and provided that the parties understand the Court will not delay jury selection to allow any additional time for the parties to review the responses, the Court will direct the jury administrator to instruct members of the jury pool to complete the "Confidential Juror Questionnaire" (revised version submitted October 3, *see* D.I. 498-1), in an effort to reduce the amount of time to be devoted to voir dire and jury selection.  The required revisions are the deletion of the following questions: Nos. 10, 17-18, 23-26, 29, 31-35, and 39-44.

11. With respect to spoliation,

    A. The following preliminary instruction will be provided to the jury:

### **SPOLIATION**

The law requires that parties preserve relevant documents, including emails, when litigation is pending or contemplated.  This is because, when one party sues another, each side has the right under the law to inspect or obtain production of internal documents and other evidence from the other party.

The destruction or material alteration of evidence or the failure to preserve documents or emails for another party's use as evidence in pending or reasonably foreseeable litigation is referred to as "spoliation."

In this case, it has been determined that Plantronics committed spoliation.

It has also been determined that Plantronics' spoliation was not accidental and that evidence relevant to this case may have been destroyed by Plantronics.  As such, during this trial, you may hear questions and answers from the parties referencing missing or destroyed emails and Plantronics' spoliation of evidence.  While the exact contents of the spoliated evidence are

4

unknown, you, the jury, will be permitted – but not required – to infer that the lost documents were relevant and favorable to GN's case and/or harmful to Plantronics' case.

You will learn during trial that Don Houston, a former employee at Plantronics, failed to preserve certain emails after his duty to preserve them arose. You will also hear that efforts were made to recover the emails that Mr. Houston failed to preserve and that additional emails were produced to GN through these recovery efforts.

I will have further instructions on these matters for you at the conclusion of the trial.

      B.      The following final instruction will be provided to the jury:

## SPOLIATION

I instruct you that Plantronics failed to preserve evidence after its duty to preserve arose. This failure to preserve is known as "spoliation of evidence." In other words, spoliation is the destruction or material alteration of evidence or the failure to preserve evidence for another's use in pending or reasonably foreseeable litigation.

Based on Plantronics' spoliation, you may, but are not required, to presume that the lost evidence would have been relevant and helpful to GN's case and/or would have been harmful to Plantronics' case. Alternatively, you may infer that the evidence not produced would merely have been duplicative of, or similar to, the evidence before you.

In other words, your role is to determine whether Plantronics' spoliation tilted the playing field against GN. If so, the permission given to you by the Court to infer that the missing documents would have been relevant and helpful to GN and/or harmful to Plantronics is designed to allow you to balance that playing field, should you feel it is necessary.

It is up to you to decide the extent to which the lost evidence was relevant and helpful to GN and/or harmful to Plantronics. Of course, it is impossible to know exactly what evidence was lost – although the parties have tried – so you must make these determinations to the best of your ability based on all of the facts and circumstances of this case. You must then decide how much weight and effect to give to your belief about spoliation in reaching your verdict.

      C.      At some point near the start of the trial, the Court will read the following to the jury. The time it takes the Court to read these "Stipulated Facts" to the jury will be split evenly between the parties.

## STIPULATED FACTS

1.      On May 24, 2012, Plantronics, Inc. ("Plantronics") received a letter from GN Netcom, Inc. ("GN") stating that it might file a lawsuit. Plantronics then became obligated to preserve documents, including email, and stop any normal practice of deleting documents that were no longer needed for business reasons. Plantronics was not obligated to preserve all documents; rather, only those documents related to the legal claims asserted in the potential lawsuit.

2.      The day after receiving GN's letter, Plantronics, through its legal department, took steps to preserve documents as required. Among other things, on May 25, 2012, Plantronics directed its sales staff and other personnel that they were not to destroy documents, or delete emails that could be related to the claims asserted in the potential lawsuit. Plantronics issued these "hold notices" in writing. Plantronics required all employees to acknowledge receipt of the notice and to affirm compliance, which all did. The Plantronics legal department also conducted training sessions for its employees regarding the preservation of documents.

3.      On October 12, 2012, GN filed this lawsuit against Plantronics.

4.      Despite the direction from Plantronics to preserve documents, after receiving the hold notices, Mr. Don Houston – who was then the Senior Vice President of U.S. Commercial Sales for Plantronics – deleted certain emails and, on three occasions, directed others to delete certain emails. It appears that at least some of the recipients followed that direction. Therefore, there has been spoliation of evidence by Plantronics in this case.

5.      The spoliation in this case relates primarily to the intentional deletion or destruction of emails involving Mr. Houston. Mr. Houston had received a hold notice on May 25, 2012.

6.      At least part of the motivation for the email deletion was to deprive GN of evidence to use in this litigation.

7.      On February 18, 2014, the Plantronics legal department obtained back-up tapes of all of Mr. Houston's emails that existed at the time. In accordance with Plantronics company policy, these tapes preserved email going back 90 days, to November 5, 2013. For the period after November 5, 2013, all of Don Houston's emails were preserved. Plantronics reviewed the back-up tapes and produced responsive documents recovered from those tapes.

8.      In an effort to identify any potentially responsive emails which may not have been retained, Plantronics agreed to collect documents from an additional 23 Plantronics employees, who were the employees with whom Mr. Houston was known to correspond at Plantronics, and to produce additional responsive documents collected from those individuals. This was in addition to the 20 Plantronics employees whose documents – including emails – had already been searched for responsive documents (including emails).

9. While Plantronics did take some steps to recover the deleted emails, including searching custodians who might have received emails deleted by others, it did not take all steps it could have taken to recover the deleted emails.

10. The only period during which emails may have been deleted in violation of the litigation hold requirements is between May 25, 2012 – the date of the first notice from GN to Plantronics – and November 5, 2013 – the date after which back-up tapes were retained.

11. In this litigation, Plantronics has produced to GN more than 1.2 million documents, totaling more than 4 million pages. The Plantronics document production includes more than 13,000 documents from Don Houston, totaling more than 58,000 pages.[2]

12. Of the documents produced from Mr. Houston, 12,212 documents were produced from Mr. Houston's email account and files. An additional 1,487 emails were produced from the back-up tapes of Mr. Houston's email account. 1,324 emails were collected and produced from Mr. Houston's hard drives.

13. In addition to the emails produced from Mr. Houston's own email account, backup tapes, and hard drives, an additional 22,240 emails that were sent by, to, or copied to Mr. Houston were produced from the email accounts of the first 20 Plantronics employees whose documents (including emails) were searched. An additional 1,287 emails that were sent by, to, or copied to Mr. Houston were produced from the email accounts of the 23 additional Plantronics custodians.

14. GN also received approximately 175,000 documents from Plantronics distributors and resellers, including approximately 150,000 from Plantronics Only Distributors (who are also referred to as "PODs"). Of the approximately 175,000 documents, 99 were emails sent by, to, or copied to, Mr. Houston.

15. Both GN and Plantronics retained forensic experts to analyze the email deletion issue. The experts agreed that some of the deleted emails were unrecoverable. They could not agree as to the scope of the destruction. Nor have the parties been able to agree as to whether any expert's estimate is reliable. It may be that several hundred or even up to 15,000 potentially responsive relevant emails were deleted or destroyed; or, alternatively, it may be that fewer or even zero relevant emails were destroyed and never recovered and produced.

16. Plantronics sanctioned Mr. Houston for his participation in the spoliation by making him pay the company back $1 million. Later, in July 2017, Plantronics terminated Mr.

---

[2]The Court will include paragraphs 11-14 if, but only if, no later than Saturday, October 7 at 3:00 p.m., Plantronics submits an affidavit providing the evidentiary basis for the numerical figures contained in these paragraphs, all of which the Court adopted based on Plantronics' representations.

Houston, for reasons at last partially related to his role in the spoliation.

As I told you in the preliminary instructions, I will give you further instructions on the issue of spoliation at the conclusion of the evidentiary portion of trial.

***

_____<br>
HONORABLE LEONARD P. STARK<br>
UNITED STATES DISTRICT JUDGE