# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GN NETCOM, INC., <br><br> Plaintiff, <br><br> v. <br><br> PLANTRONICS, INC., <br><br> Defendant. | C.A. No. 12-1318-LPS |

## **MEMORANDUM ORDER**

At Wilmington this **3rd day** of **January, 2018**:

The Court held a six-day jury trial in this antitrust case in October 2017. (*See* D.I. 553-59) ("Trial Tr.") At the conclusion of the trial, the jury returned a verdict in favor of Defendant Plantronics, Inc. ("Plantronics"). (D.I. 534) Plaintiff, GN Netcom, Inc. ("GN") has moved for a new trial based on the Court's handling of issues relating to Plantronics' spoliation of evidence and the Court's decision not to admit evidence of a purportedly negative aspect of Plantronics' relationship with the federal government. (D.I. 545) Plantronics has moved to recover a portion of the attorney's fees it incurred in preparing a defense to GN's state-law claim for tortious interference with prospective business relations. (D.I. 547)

Having reviewed the parties' briefing (*see* D.I. 546, 548, 560, 562, 563, 564) on their respective motions, as well as the materials submitted in relation to those motions, and having

1

presided over trial (and the preceding five years of extensive pretrial litigation),[1] **IT IS HEREBY ORDERED** that the parties' motions (D.I. 545, 547) are **DENIED**.

## GN's New Trial Motion

**Legal Standards**

GN moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a), which provides in pertinent part, "The court may, on motion, grant a new trial on all or some of the issues – and to any party – as follows: . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." New trials are commonly granted where "the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice," where newly-discovered evidence exists that would likely alter the outcome of the trial, where "improper conduct by an attorney or the court unfairly influenced the verdict," or where the jury's verdict was "facially inconsistent." *Zarow–Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584-85 (D.N.J. 1997).

The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem Corp.*, 9 F.3d 282, 289 (3d Cir. 1993) (reviewing "district court's grant or denial of a new trial motion" under "abuse of discretion" standard). Although the standard for

---

[1] GN filed its complaint on October 12, 2012. (D.I. 1) Over the ensuing five years, among many other things, the Court issued opinions denying Plantronics' motion to dismiss (D.I. 20), granting GN's motion for sanctions (D.I. 333), and denying Plantronics' motion for summary judgment (D.I. 495). In other opinions and orders (including rulings from the bench), the Court ruled on the parties' discovery disputes (*see, e.g.*, D.I. 136, 294, 431, 437), motions to strike (D.I. 332, D.I. 392), motions *in limine* (D.I. 496), disputes as to how to handle spoliation-related issues at trial (D.I. 502), and requests for supplemental sanctions (D.I. 450) and for reconsideration (D.I. 522; *see also* D.I. 553).

2

grant of a new trial is less rigorous than the standard for grant of judgment as a matter of law – in that the court need not view the evidence in the light most favorable to the verdict winner – ordinarily a new trial should only be granted "where a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or the verdict "shocks [the] conscience." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-53 (3d Cir. 1991).

**GN's Contentions**

GN seeks a new trial based on its contention that the Court committed prejudicial errors of law. (*See, e.g.*, D.I. 546 at 9-10) Resolving a new trial motion predicated on such grounds requires a determination of "whether an error was in fact committed" and, if so, "whether that error was so prejudicial that denial of a new trial would be inconsistent with substantial justice." *Finch v. Hercules, Inc.*, 941 F. Supp. 1395, 1414 (D. Del. 1996) (internal quotation marks and citation omitted); *see also Goodman v. Pa. Turnpike Comm'n*, 293 F.3d 655, 676 (3d Cir. 2002) ("A motion for a new trial should be granted where substantial errors occurred in admission or rejection of evidence.").

In particular, GN contends the Court erred, and prejudiced GN's substantial rights, in two specific ways: (1) with respect to spoliation, by providing the jury a permissive adverse instruction, rather than a dispositive sanction, and "present[ing] a sanitized version of facts regarding Plantronics' spoliation that vastly ignored how egregious its misconduct was and how detrimental the consequences were on GN's case" (D.I. 546 at 15); and (2) refusing to admit evidence of the General Services Administration's ("GSA") issuance of a Notice of Proposed Debarment to Plantronics, which was based on GSA's review of this Court's opinion imposing sanctions on Plantronics for its spoliation of evidence (*id.* at 15-19). The Court concludes that

3

GN has failed to show that either of these are errors of law that affected GN's substantial rights.

**Spoliation: Legal Error**

The first purported legal error GN points to is the Court's handling at trial of issues relating to Plantronics' spoliation of evidence. Among other things, GN faults the Court for not entering a dispositive sanction, prohibiting GN from presenting to the jury "core facts" relating to the spoliation, and including and omitting evidence from the "Facts" the Court read to the jury that GN believed should or should not have been before the jury. (*See, e.g.*, D.I. 546 at 10-14)

The Court does not believe it committed legal error with respect to its handling of spoliation and sanctions. As Plantronics points out,

> To say that much ink has been spilled over the issue of spoliation would be an understatement. Even excluding the present briefing, there have been six rounds of briefing related to the issue of spoliation, with more than 200 pages of briefs, more than 1,700 pages of supporting appendices and declarations, six hearings, and three Opinions and Orders by the Court.

(D.I. 562 at 3-4) (internal footnotes omitted) Along the way the Court held an evidentiary hearing and heard repeated arguments about spoliation, sanctions, and how to present these issues to the jury. (*See, e.g.*, D.I. 385, 507, 509)

While the Court will admit that preserving both parties' rights to a fair trial was a challenging endeavor, the Court continues to believe it managed to do so without committing legal error. The Court incorporates by reference all of its prior analysis with respect to spoliation, sanctions, and how these issues were to be handled at trial.

**Spoliation: Prejudice**

In any event, even if the Court had committed legal error, there is no basis to find that any such error substantially prejudiced GN. Bearing in mind the totality of the evidence that was

4

admitted (both with regard to the substantive dispute and the spoliation issue), and comparing that to the relatively limited additional spoliation-related evidence GN contends the jury should have heard, any error in how the Court handled the spoliation issue at trial was harmless. *See* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial . . . [or] for setting aside a verdict . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

As Plantronics emphasized at trial:

> GN's own documents and sales data showed that Plantronics-Only Distributors ("PODs") were among GN's top 10 resellers. GN also failed to produce any evidence – which would have been in GN's own files – of any lost sales or lost customers and failed to provide an effective response to GN's admitted gross mismanagement that led to its poor sales.

(D.I. 562 at 1; *see also id.* at 15 ("GN presented no evidence to the jury of any purported lost sales or lost customers – information that would be in GN's possession."), 16-17 (summarizing GN emails from which jury could have found that GN's mismanagement led to its lower market share)) The jury was not obligated to accept Plantronics' interpretation of the evidence, but it was free to do so, and there is no basis to conclude that the jury would instead have been persuaded by GN's interpretation had the Court done more for GN as a sanction for Plantronics' spoliation.

GN insists that "the Court's sanction of a permissive adverse inference did ***nothing*** to cure the prejudice to GN caused by Plantronics' spoliation of evidence." (D.I. 546 at 1) (emphasis added) The Court entirely disagrees. More importantly, the Court did far more than simply order a permissive adverse inference. The Court also imposed financial sanctions of

5

nearly $5 million,[2] instructed the jury (preliminarily and in the final instructions) that Plantronics had committed spoliation (*see* D.I. 516, 532), began the evidentiary portion of the trial with a detailed recitation of facts relating to Plantronics' spoliation (*see* Trial Tr. at 253-58), and permitted GN throughout trial to present evidence and argument about Plantronics' spoliation (*see, e.g.*, D.I. 562 at 8-10 (summarizing some of this evidence and argument)). When one looks at how the Court actually handled spoliation, and considers the substantial evidence Plantronics presented at trial, as well as the evidence GN did *not* present – evidence that would have come from GN's own files (had such evidence existed) – the only reasonable conclusion is that GN was not substantially prejudiced by the Court's decisions with respect to spoliation.

**Debarment: Legal Error**

Turning to GN's second purported legal error, the Court concludes that it did not commit error in denying GN's request to present evidence of GSA's proposed debarment of Plantronics. Prior to trial, the Court ruled,

> With respect to the debarment investigation, any minimal probative value is substantially outweighed by the risks of unfair prejudice, juror confusion, and waste of time. The door would, however, be opened were Plantronics to argue or present evidence, inaccurately, that it has never been the subject of a government investigation. Should GN believe at any point that the door to use of the GSA

---

[2]GN acknowledges that, in addition to a permissive adverse inference, the Court imposed financial sanctions amounting to nearly $5 million. (D.I. 546 at 11 n.27) Yet, because GN valued its lawsuit at $212 million, GN contends that "the lesson this case teaches future defendants is that it is better to spoliate evidence than to comply with the legal obligation to preserve." (*Id.*) The Court disagrees. In the Court's view, the lesson, instead, is that in cases in which a dispositive sanction is not warranted, the Court can (with some struggle) provide a fair trial to both sides by permitting the jury to learn of the improper spoliation – and empowering the jury to assess what impact, if any, that spoliation had on a party's ability to prove its case – while keeping the focus of the trial on the merits of the underlying substantive claims that gave rise to the lawsuit.

> evidence has been opened, it must provide notice and obtain leave
> of the Court before using such evidence.

(D.I. 502 ¶ 4)

At trial, GN contended that Plantronics opened the door by introducing evidence that Plantronics had recently succeeded in winning new government contracts, including with local governments geographically close to Delaware (e.g., New York). (*See* Trial Tr. at 877-82) The Court disagreed and denied GN's request to cross-examine Plantronics' corporate representative on the proposed debarment, finding that while there was relevance (given the recency of the new government business), the countervailing factors identified in Federal Rule of Evidence 403 substantially outweighed the probative value, and adding that Plantronics did not do what the Court had indicated would be viewed as opening the door. (*See* Trial Tr. at 879-82)[3]

In its new trial motion, GN fails to identify any error in the Court's decision.

**Debarment: Prejudice**

Even if the Court's decision were error, it did not prejudice GN's substantial rights. It is undisputed that within months of the GSA issuing its notice, GSA dismissed the proposed debarment based upon a finding of "no cause." (*See* D.I. 562 at 2; D.I. 490-11 at 61 of 69) Had the Court admitted evidence of the proposed debarment, it would also have had to admit evidence of the GSA's conclusion. In sum, then, the debarment evidence would likely have been viewed by the jury as neutral or possibly even as helpful to Plantronics. The Court agrees with

---

[3]It bears emphasis how little probative value there was to the debarment evidence. The GSA proceeding was instigated entirely by GSA learning of this Court's opinion imposing sanctions on Plantronics due to its spoliation. In a real sense, then, the GSA proposed debarment showed nothing more than that Plantronics had been sanctioned by this Court for spoliation (which the jury already knew) and that when GSA learned of this GSA looked at the issue as well.

7

Plantronics that "it is highly probable that the exclusion of the already dismissed GSA proceeding had no bearing on the outcome of this case." (D.I. 562 at 20)

**Discretion**

"The decision to grant or deny a new trial is left almost entirely to the discretion of the district court." *Radwan v. Carteret Bd. of Educ.*, 62 F. App'x 34, 37 (3d Cir. 2003) (citing *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992)). Because the Court firmly believes that GN (as well as Plantronics) had a fair trial – including a full and fair opportunity to present appropriate evidence relating to Plantronics' spoliation – the proper exercise of the Court's discretion is to deny GN's request for a new trial.

GN contends "it is clear that Plantronics' entire defense strategy involved distracting the jury from its misconduct with a narrative of its pro-U.S. government history from the 1950's to today. GN contends that this strategy, at least by inference, was pursued to distract the jury from the merits of the case to a contest between a U.S. company, favored by the U.S. government, against a foreign plaintiff." (D.I. 546 at 1-2; *see also* D.I. 563 at 6 ("[The jury] rendered its decision based *solely* on its perception of Plantronics as a pro-government, classic American company and GN as a Danish company that brought suit because it could not come into the United States and easily compete in the market.") (emphasis added)) GN's portrayal of what occurred at trial fails to comport with the trial the Court witnessed. Instead, to the Court, it appeared that Plantronics' defense strategy was to challenge GN's showing on each of the essential elements of GN's antitrust claims. The jury could have accepted either side's evidence, and it made the not unreasonable decision to accept Plantronics'.

GN is correct that the Court found it necessary to strike Juror No. 3 after the juror was

8

twice observed interacting with defense witnesses, apparently to thank those witnesses for their military service, about which the witnesses had testified. (*See, e.g.*, Trial Tr. at 1550-55) From that incident – which the Court handled prior to deliberations, and in a manner which drew no objection from GN, and over the objection of Plantronics (*see* Trial Tr. at 1537-38) – GN leaps to the conclusion that "other jurors may also have held Plantronics in high regard due to its pro-government reputation." (D.I. 546 at 2) GN insists, "Juror No. 3 exhibited a pro-government bias that favored Plantronics, and the Court cannot be satisfied that it is 'highly probable' that other jurors were not similarly biased due to Plantronics' one-sided presentation of evidence." (D.I. 546 at 16)

Pursuing this theme, GN states that "the crux" of its motion for a new trial is that the jury "***entirely ignored*** the substantive evidence that the parties put on in regards to the merits of the antitrust claims." (D.I. 563 at 6) (emphasis in original) GN goes on to describe the "substantive arguments" in its motion as "boil[ing] down to a contention that the exclusion of the spoliation evidence coupled with the exclusion of the GSA Debarment Proceeding evidence ***fueled the jury's pro-government bias*** and resulted in a verdict that was ***not based on the merits***." (*Id.* at 10) (emphasis added) GN goes so far as to assert that "the jury ***never seriously considered the merits*** of its antitrust claims" but instead "simply decided in favor of Plantronics ***based on its pro-government bias***." (D.I. 563 at 1 (emphasis added); *see also id.* at 2 ("GN argues that the defense verdict was the result of Plantronics' one-sided presentation of a pro-government narrative to a jury that was obviously keen to accept that caricature of it."))

GN's repeated attacks on the jury – on its motivations, perceptions, and the contents of its deliberations – strike the Court as offensive nonsense. And they are totally unfounded and

9

entirely unsupported in the record. Having presided at trial, the Court's view is that it is highly probable – and, indeed, nearly certain – that the jury performed its role appropriately and based its decision on the evidence, rather than unfair bias. In these circumstances, it is most appropriate for the Court to exercise its discretion against GN and deny its motion for a new trial.

**Plantronics' Attorney's Fees Motion**

Turning to Plantronics' motion for attorney's fees, the Court encounters a distinctly different characterization of this litigation, but one that is at least equally off-base.

Plantronics begins its opening brief with a non sequitur: "This case was litigated for five years with the jury ultimately rendering a complete defense verdict for Plantronics after just over an hour of deliberations – demonstrating the utter lack of merit to GN's claims." (D.I. 548 at 1) The Court does not agree that the length of the jury's deliberations "demonstrates" the weakness of GN's case, nor the strength of Plantronics' case. Instead, the Court believes that this lawsuit raised triable disputes of fact, that were fairly and effectively tried by both sides, and that a properly and carefully instructed jury, aided by a simple and clear verdict form, efficiently resolved those disputes in a reasonable (though by no means the only reasonable) manner.[4]

Moving to the substance of Plantronics' motion, Plantronics fares no better. Plantronics "moves for a reasonable portion of the attorney's fees it incurred in defending against GN's

---

[4]In its reply brief, Plantronics asserts that "GN's antitrust claims themselves lacked merit from the beginning of the case – as ultimately proven by Plantronics' complete defense verdict." (D.I. 564 at 4 n.1) The Court does not believe that the jury verdict "prove[s]" any such thing. As reflected in the Court's motions rulings, this is a case that required a trial resolution. There was evidence on both sides. Here, the "complete defense verdict" does not prove that GN's claims lacked merit (and should not have been pursued), just as a verdict for GN would not have proven that Plantronics lacked a legitimate defense (and should have conceded defeat at the start of the case).

baseless claims." (D.I. 548 at 1) Plantronics seeks to recover its fees, from either GN or GN's counsel, pursuant to Federal Rule of Civil Procedure 54(d)(2), 28 U.S.C. § 1927, and the Court's inherent authority. (*See id.*) Although litigants generally bear their own costs of action, when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The Third Circuit has interpreted § 1927 to permit fee awards where "an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002). Additionally, it is inherent in the Court's discretionary power to award attorney's fees "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation marks and citation omitted).

Plantronics seeks the "narrowly tailored" relief of $877,692, which it contends is a reasonable estimate of the fees it incurred after August 29, 2017 defending against GN's tortious interference claim. (D.I. 548 at 1) To Plantronics, the August 29 date is crucial because at a hearing that day "GN's counsel asserted, without any evidentiary basis, that he could '***come up with a theory***' at trial on which the tortious interference claim could stand alone separate and apart from GN's antitrust claims." (*Id.*) (quoting D.I. 484 at 53) (emphasis added by Plantronics) To Plantronics, this statement – combined with GN's decision during trial to drop its tort claim, as well as GN's articulation (for the first time) of a stand-alone theory of tort liability in its brief opposing the attorney's fees motion – means Plantronics should be awarded the requested portion

of its fees. (*See id.* at 7; *see also* D.I. 564 at 1)

Plantronics' motion is completely devoid of merit. GN did not proceed at trial on a tort theory that was divorced from its antitrust theory. Nor did Plantronics have any reason to believe that GN would try to do so.

The August 2017 colloquy on which the motion is based is not characterized accurately by Plantronics. In the course of hearing argument on Plantronics' motions for summary judgment and to exclude GN's expert, the following exchange occurred between the Court and GN's counsel:

> COURT: If I were to grant the *Daubert* motion, must I also grant summary judgment or do you think you still have a case?
>
> MR. PATTERSON: If you grant – well, it's interesting because it's a little unclear as to sort of what relief they're asking for.
>
> COURT: They asked that I exclude everything.
>
> MR. PATTERSON: Well, if you exclude everything, then I'm not sure. Maybe on a tortious interference claim, I could come up with a theory that they haven't really moved on that. But clearly I think you have to have an expert to support an antitrust claim. And to be clear, I don't think you should grant the *Daubert* motion.

(D.I. 484 at 53-54)

As can be seen, the discussion with counsel reflected the Court's curiosity as to what, if anything, would remain of the case were it to strike GN's expert. GN's counsel's response was that while granting the *Daubert* motion would effectively be dispositive as to the antitrust claims,

12

it might not be dispositive as to the tortious interference claim, as expert testimony might not be required to support that claim. GN was not suddenly reserving for itself the right to pursue a tort claim untethered from its antitrust claims. As can also be seen, counsel only said "*[m]aybe*" he could come up with a new tort theory, not that he certainly could or that he had any intention of doing so.

Thus, the basic premise of Plantronics' motion is unfounded. It is not plausible that this fleeting reference to a mere possibility in response to a hypothetical question posed by the Court caused Plantronics to incur any greater attorney's fees. At no point, during the August hearing or thereafter, did GN indicate that it was going to come up with a new theory of tort liability. Nor does Plantronics point to any basis for any concern (if Plantronics even had such a concern) that the Court would have permitted GN to do so. The record reflects nothing close to bad faith, nor vexatious or harassing litigation conduct.[5] Instead, the Court agrees with GN: "The notion that Plantronics was 'forced to incur considerable expense preparing for trial on this alleged separate common law "theory" that GN was preparing to "come up with"' is not entitled to serious consideration." (D.I. 560 at 9-10) (quoting D.I. 548 at 6)

Furthermore, Plantronics has failed to persuade the Court that any aspect of GN's handling of its tort claim was "unreasonable and vexatious and demonstrably exemplifies bad faith." (D.I. 548 at 1) GN's tortious interference claim was pled in the complaint it filed in 2012

---

[5]Plantronics admits that "until GN's counsel's representations at the August 29, 2017 hearing, GN represented that its antitrust and tortious interference claims rose and fell together." (D.I. 564 at 9 n.5) As shown from the excerpt of the transcript of the hearing that day, GN's counsel did not abandon or contradict that representation on August 29. Plantronics points to nothing that occurred after August 29 inconsistent with GN's representations as to the tort claim's dependence on the antitrust claims.

(*see* D.I. 1 ¶¶ 86-91), survived a motion to dismiss in 2013 (*see* D.I. 20), and withstood Plantronics' challenge on summary judgment in 2017 (*see* D.I. 495). Throughout, it was clear that GN's theory of tortious interference overlapped with the theory on which it predicated its antitrust claims. (*See, e.g.*, D.I. 560 at 1 ("GN has asserted its tortious interference claim consistently since filing its Complaint in 2012, and has always (up through the Pretrial Order) been clear that it was based on the same anticompetitive conduct that formed the basis for its antitrust claims."); *see also* D.I. 490-2 at 10-11 of 11 (proposed pretrial order summarizing GN's theory of tortious interference)) And as explained above, nothing that occurred at (or after) the August 2017 hearing changed GN's theory or Plantronics' notice of it.

Finally, what Plantronics faults as "gamesmanship" (D.I. 548 at 7), the Court views as permissible trial strategy decisionmaking. (*See* D.I. 560 at 1) (GN describing its "strategic decision to dismiss the [tort] claim, with the consent of Plantronics, to simplify the case")

## Conclusion

For the foregoing reasons, GN's motion for a new trial (D.I. 545) and Plantronics' motion for attorney's fees (D.I. 547) are both **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall, no later than January 8, 2018, submit a joint status report, indicating what, if anything, more they request the Court do in this matter, and at the same time submit any proposed form of order(s) or final judgment for the Court to enter.

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE